```
          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF TEXAS
                  FORT WORTH DIVISION
```

CHARLES TRENT TOWNSEND, ET AL.,  §
                                 §
         Plaintiffs,              §
                                 §
VS.                              §   NO. 4:06-CV-486-A
                                 §
THE GOODYEAR TIRE AND RUBBER     §
COMPANY,                         §
                                 §
         Defendant.              §

## MEMORANDUM OPINION
## and
## ORDER

On January 31, 2007, defendant, The Goodyear Tire and Rubber Company ("Goodyear"), moved for summary judgment on all claims asserted by plaintiffs, Charles Trent Townsend and Jackie Townsend, individually, and as representatives of the estate of Trevor Townsend, deceased, ("plaintiffs"), in the above-captioned action. Having considered the motion, the response, the reply, the summary-judgment evidence, and the applicable legal authorities, the court concludes that the motion should be granted for the reasons stated below.

I.

### Plaintiffs' Claims

On May 31, 2006, plaintiffs filed their original petition in state court against Goodyear.[1] Plaintiffs alleged Goodyear is liable for damages caused by injuries resulting in the death of Trevor Townsend ("Trevor") and sought recovery under Tex. Civ. Prac. & Rem. Code §§ 71.001-12, 71.021 (Vernon 1997). Charles

---

[1] The action was removed to this court by Goodyear's notice of removal filed July 13, 2006.

Trent Townsend and Jackie Townsend, who are the parents of Trevor, contend that Goodyear has liability because Trevor was not properly trained to perform the tire installation activities in which he was engaged when he was injured, and that the equipment he was using to change tires, the procedure he used to change tires, and the supervision he received in his work were inadequate.

II.

Background

The facts set forth below are undisputed in the summary judgment record:

A. Trevor's Accident

On October 14, 2004, Trevor was fatally injured in an accident at Prine, Inc. d/b/a Granbury Tire Center ("Prine"), his place of employment. Trevor's injuries were sustained while he was attempting to install tires, manufactured by Goodyear, on a customer's motor home. At the time of his accident, Trevor was 21 years old and had worked for Prine for three months. Prior to working for Prine, Trevor had no received no training on how to change tires on a motor home. While working for Prine, Trevor received assistance from a Prine employee in changing tires on a motor home on two occasions prior to his accident.

B. The Dealer Agreement and the License

In April of 2004, Prine and Goodyear entered into a Dealer Agreement (the "Dealer Agreement") under which Prine became a non-exclusive authorized dealer of Goodyear tires. The Dealer Agreement specifically stated that "Dealer acknowledges and

agrees that it is an independent contractor and nothing contained herein shall be construed to constitute or deem either party as an agent, employee, representative, partner, joint venturer, or other associate of the other." App. in Supp. Def.'s Mot. Summ. J. 67.

In addition to the Dealer Agreement, Goodyear and Prine were operating under a Goodyear Gemini Retail Marketing System and Service Mark License (the "License"). Id. at 5. The License enabled Prine to use Goodyear's "Gemini" Service mark in connection with certain "Licensed Services". Id. Such Licensed Services were listed in Exhibit D to the License.[2]

The License also contained a requirement that Prine have trained technicians performing the Licensed Services. The License provided that,

> 1. Licensee agrees that at all times during the effective term of this Agreement it will retain in its employment adequately trained automotive technicians to proficiently perform all of the automotive services identified in [Exhibit D] of this Agreement.
> ...
> 2. To facilitate its performance of licensed services under the [Gemini Service] Mark in accordance with Goodyear's standards, Licensee agrees that it will provide

---

[2] Exhibit D to the License Agreement states that:

> Licensee will at all times ... maintain adequate equipment, tools and trained personnel to perform at least the following services: A. Brake systems – maintenance and services.  B. Suspension and steering system service, including computerized vehicle alignment and wheel balancing.  C. Ignition and fuel system services, including computerized diagnostic and repair of on board automotive computer systems.  D. Cooling system services.  E. Drive train services (wheel bearings, seals, axle bearings, CV joint).  F. Lubrication and oil change services including transmission maintenance.  G. Air conditioning maintenance, service and repair.

App. in Supp. Def.'s Mot. Summ. J. 11.

>     the following personnel training as outlined in (Exhibit E),
>     as long as the Agreement is in force.

App. in Supp. Def.'s Mot. Summ. J. 6.[3] The License does not specifically require any training courses on safety or on any subject outside the scope of the Licensed Services, but it does provide that "[p]ersonnel standards and training requirements in addition to those outlined in this Article may be required as new automotive service needs become apparent." Id. at 6. The License does not mandate that Prine's technicians use Goodyear training courses, and it allows Prine to decide what training to provide its employees so long as the training met certain criteria.

The License states that Prine will satisfy general cleanliness standards and will "maintain adequate equipment, tools and trained personnel" to perform the Licensed Services. Id. at 5. Article VII of the License, entitled "Quality Standards", provides in pertinent part that:

>     It is understood that Goodyear shall at all times have
>     the sole responsibility for determining whether or not
>     its automotive service standards are being met.  To
>     facilitate Goodyear's evaluation of the quality of the
>     automotive service work being performed by Licensee
>     under the [Gemini Service] Mark, Goodyear's authorized
>     representatives shall at all times have a right to make
>     inspections and to observe the automotive service work

---

[3] Exhibit E to the License Agreement provides, in pertinent part, that:

>     [o]n an ongoing basis, this Agreement requires a minimum of
>     eighty (80) credits of technical training annually per
>     outlet in order that Licensee's automotive technicians may
>     be certified as satisfactorily completing at least one of
>     Goodyear's prescribed training programs, or approved
>     equivalent, designed to teach the technical skills necessary
>     to proficiently perform the automotive maintenance and
>     repair service identified in (Exhibit D) of this Agreement.

App. in Supp. Def.'s Mot. Summ. J. 12.

4

>   performed by Licensee and its employees.  Such inspec-
>   tions shall also confirm equipment requirements,
>   equipment calibration, and availability of required
>   service tools as well as verifying the capabilities of
>   automotive technicians and their ability to use the
>   required equipment.  Licensee will cooperate with
>   Goodyear's representatives to facilitate their
>   inspections to assure that industry standards are being
>   maintained.

Id.  The License does not state that Goodyear would be in charge of Prine's daily activities with respect to the Licensed Services.

C. <u>Goodyear's Involvement with Prine's Facilities</u>

Goodyear was not involved in who Prine chose to hire, nor did Goodyear participate in Prine's training of its employees. Patrick Prine owned the premises on which Prine's business was conducted.  Goodyear did not tell Prine what jacks or other equipment had to be used to change tires, and did not provide any equipment to be used to change tires at Prine's facility. Goodyear did not have any of its personnel present at Prine's facility to oversee any of the work done there.

The documents Trevor filled out and received when he began his employment with Prine showed that Prine was his employer. The paychecks that Trevor received for his work showed that his wages came from Prine.  The only training and supervision Trevor received in relation to his job was from other Prine employees.

The Dealer Agreement and the License permitted Prine to display Goodyear signage, including the Gemini service logo, in connection with its promotion of products.  Goodyear intended this advertising to be directed to the general public.  Goodyear did not provide Trevor with any information intended to cause

5

Trevor to believe that Goodyear was his employer or was somehow responsible for his training and safety with respect to his work activities.

III.

The Motion for Summary Judgment

Goodyear maintains that plaintiffs' claims cannot survive summary judgment because: (1) Goodyear did not owe a duty to Trevor to exercise care for his safety, and (2) Goodyear is not vicariously liable for Prine's conduct.  As to its duty ground, Goodyear maintains that there was no relationship between it and Trevor that would cause it to have an obligation to exercise care for Trevor's safety, that the doctrine of inherently dangerous activities does not apply, and that even if the doctrine did apply it would not create a duty on the part of Goodyear to exercise care for Trevor's safety.  In support of its non-vicarious liability ground, Goodyear contends that Prine was not its agent for whose conduct it could be held liable and that the doctrine of apparent authority does not apply.

IV.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this

6

burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994)(emphasis added). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984). "'Summary judgement, to be sure, may be appropriate, even in cases where elusive concepts ... are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Forsyth, 19 F.3d at 1533 (quoting Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993)(emphasis added)).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597. See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

V.

Analysis

A. Goodyear Is Entitled to Summary Judgment Because It Did Not Owe a Legal Duty to Trevor

To establish liability for negligence, plaintiff must initially prove the existence of a duty owed by the defendant to Trevor. Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1992)(citing Abalos v. Oil Dev. Co. of Texas, 544 S.W.2d 627, 631 (Tex. 1976)). "The existence of a legal duty is a question of law for the court to decide, and that determination is made from the facts surrounding the occurrence in question." Tri v. J.T.T., 162 S.W.3d 552, 563 (Tex. 2005)(footnote and internal quotation marks and citations omitted). The parties seem to agree that the duty issue is governed by Texas law pertaining to relationships such as the manufacturer-dealer relationship, premises owner-independent contractor relationship, general contractor-subcontractor relationship, franchisor-franchisee

8

relationship, and lessor-lessee relationship.  And, the parties seem to concur that whether Goodyear owed a duty of care to Trevor depends on the level of control Goodyear asserted, or had the right to assert, over Prine.  Examples of Texas cases on that issue are <u>Fifth Club, Inc. v. Ramirez</u>, 196 S.W.3d 788, 790 (Tex. 2006)(analyzing an employer's duty to its independent contractor); <u>Shell Oil Co. v. Khan</u>, 138 S.W.3d 288, 293 (Tex. 2004)(considering a franchisor's duty to its franchisee's employee); <u>Dow Chem. Co. v. Bright</u>, 89 S.W.3d 602, 606 (Tex. 2002)(involving a general contractor's duty to his subcontractor's employees); <u>Koch Ref. Co. v. Chapa</u>, 11 S.W.3d 153, 154 (Tex. 1999)(considering duty owed by premises owner to its independent contractor's employees).

Under Texas law, an employer can be held liable for the actions of his independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the injury.  <u>Fifth Club</u>, 196 S.W.3d at 791 (citing <u>Redinger v. Living, Inc.</u>, 689 S.W.2d 415, 418 (Tex. 1985)).  In <u>Redinger</u>, the Texas Supreme Court adopted section 414 of the Restatement (Second) of Torts, which states,

> One who entrusts work to an independent contractor, but who retains the control of any part of the work is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965); <u>Redinger</u>, 689 S.W.2d at 418 (quoting section 414).  In 1998, the Court clarified that under section 414, safety requirements imposed by a general

9

contractor give rise to a <u>narrow</u> duty of care towards its subcontractor's employees.  <u>Hoechst-Celanese Corporation v. Mendez</u>, 967 S.W.2d 354, 357.  "For the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury."  <u>Id</u>. (quoting <u>Clayton W. Williams, Jr., Inc. v. Olivio</u>, 952 S.W.2d 523, 528 (Tex. 1997)).  The Court's emphasis on the <u>nexus</u> between an employer's retained supervisory control and the condition or activity that caused the injury indicates that, while an employer may indeed have a duty of care under section 414, the <u>scope</u> of such duty toward independent contractors is limited to the <u>scope</u> of its retained supervisory control.  <u>See</u> <u>id</u>; <u>see also</u> <u>Exxon Corp. v. Tidwell</u>, 867 S.W.2d 19, 23 (Tex. 1993)(stating that "in a case alleging negligence in maintaining a safe work-place, the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than a more general right of control over operations").  Indeed, "[a] contracting party's right to order work stopped or fire an independent contractor for non-compliance does not create liability for everything the independent contractor does (or fails to do)."  <u>Shell Oil Co. v. Khan</u>, 138 S.W.3d 288, 293 (Tex. 2004)(citing <u>Dow Chem.</u>, 89 S.W.3d at 607-08).

In <u>Shell</u>, the plaintiff was an employee at a gas station operated by La Sani pursuant to a dealer agreement and lease with Shell Oil.  <u>Id</u>. at 291.  The plaintiff was injured during a robbery at the gas station.  He claimed that Shell was liable to him for negligence because the dealer agreement gave Shell the

10

right to control safety and training of La Sani's employee's. Id. at 291-93. The plaintiff argued that, (1) Shell's right to control training and (2) the requirement in the dealer agreement that La Sani hire an adequate and competent staff, each created a duty of care toward the plaintiff. Id. at 292-93. Specifically, the plaintiff claimed that Shell was liable for not training him in robbery prevention and for not insisting that La Sani hire a security guard. Id.

The Texas Supreme Court found that Shell did not have the requisite control to create a duty toward the plaintiff. First, the court stated that to accept plaintiff's argument regarding Shell's liability for La Sani's failure to hire a security guard, would be "to construe a contract [the dealer agreement] requiring dealers to hire an adequate number of competent employees to create liability for Shell if they do not." Id. at 293. The court was unwilling to impose such liability. Id. Second, the Court held that although Shell gave all dealers a training manual and required them to take a security training course, such requirements were insufficient to make Shell liable for the security of its dealers' employees. Id. at 293-94. In holding that Shell did not possess control sufficient to owe a duty toward the plaintiff, the court found that: (1) the dealer agreement gave La Sani the right to decide where and how to train its employees; (2) a contract requiring a franchisee to comply with general safety practices and trains its employees to do so does not establish adequate control; and (3) there was no showing that any security activities that Shell controlled actually

11

caused or contributed to the act that resulted in plaintiff's injuries.  Id.  Here, the threshold issue is whether Goodyear retained the requisite supervisory control over the activity Trevor was involved in at the time of his accident, – more specifically, whether Goodyear had a right to control the means, methods and details of Trevor's training and safety with respect to changing tires on motor homes or oversized vehicles.

Although the Dealer Agreement and the License contain provisions related to training employees in general, such provisions did not give Goodyear the requisite degree of control over the training or supervision of Prine employees in changing tires on oversized vehicles.  Plaintiffs argue that the provisions in the License imposed on Goodyear a responsibility to ensure that Prine employees were properly trained with respect to the Licensed Services and given proper equipment to perform such services.  Even assuming that changing tires on a motor home is one of the Licensed Services, the provisions related to those services simply do not impose liability on Goodyear for Prine's failure to properly train and equip its own employees.  See Shell, 138 S.W.3d at 293 (holding that a dealer agreement that required dealers to train its employees in a specific manner could not be used to impose liability on the franchisor for the dealer's failure to comply with the training requirements).

Plaintiffs also claim that the License and Dealer Agreement imposed liability on Goodyear by requiring it to supervise the methodology of the work performed by Prine's employees, including the safe installation of tires.  However, the Dealer Agreement

12

and the License simply do not support plaintiffs' assertion. There were no provisions imposing safety requirements or guidelines with respect to the work Trevor was performing at the time of his accident; rather, the License simply gives Goodyear the right to inspect Prine's facility to ensure certain quality standards were being met.

Plaintiffs apparently rely on the Texas principle that "a person that hires an independent contractor to perform inherently dangerous work has a nondelegable duty to assure the work is performed safely." Lathers v. Penquin Industries, Inc., 687 F.2d 69, 73 (5th Cir. 1982). Such duty is owed to third parties who are killed or injured as a proximate cause of the dangerous activity. Id. Any negligence on the part of the independent contractor is imputed to its employer. Id.(citing Gray v. Baker & Taylore Drilling Co., 602 S.W.2d 64, 67 (Tex.Civ.App. – Amarillo, 1980, no writ)). However, the court in Lathers explained that under Texas law,

> "an employee of the independent contractor is not a third party within the rule. Thus, the employer's liability does not extend to employees of the independent contractor." Gray, 602 S.W.2d at 67. Under the "inherently dangerous activity" exception to the general rule, Texas simply recognizes no affirmative duty running from a person employing an independent contractor to the independent contractor's employees ... where the independent contractor is in possession and control of the premises on which the work is performed.

687 F.2d at 73.

Here, Trevor was injured at his place of employment while installing tires on a motor home, an activity plaintiffs apparently claim falls under the doctrine of inherently dangerous

13

activities. At the time Trevor sustained his injuries, he was an employee of Prine, an independent dealer of Goodyear tires, and was performing services at facilities owned and controlled by Prine. Therefore, even assuming arguendo that the doctrine of inherently dangerous activities applied and that, under that doctrine, Goodyear owed a duty to third parties who were injured while Prine was performing dangerous work, the duty would not extend to Trevor because he was an employee of Prine.[4]

B. There is No Evidence that Would Cause Goodyear to be Vicariously Liable For Prine's Conduct

1. Goodyear did not have control over the activities surrounding Trevor's accident sufficient to create a principal-agent relationship

"Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control." Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1296 (5th Cir. 1994). The distinction between an agent and an independent contractor or dealer is not always clear. Crow v. TRW, Inc., 893 S.W.2d 72, 78 (Tex.App. – Corpus Christi, 1994, no writ). The fact that the party is normally considered "an independent contractor, does not preclude a finding of agency as to the particular transaction at issue." Weidner v. Sanchez, 14 S.W.3d 353, 373-74 (Tex.App. – Houston [14th Dist.] 2000, no pet.). However, a principal-agent relationship will not be presumed, and

---

[4] Because the doctrine is inapplicable as Trevor was an employee of Prine, the court does not decide whether changing tires on a motor home is in fact an inherently dangerous activity.

14

the party asserting the existence of such relationship bears the burden of proof. <u>Karl Rove & Co.</u>, 39 F.3d at 1296. "To prove an agency relation under Texas law, there must be evidence from which the court could conclude that the alleged principal had the right to control both the means and the details of process by which the alleged agent was to accomplish the task." <u>Id</u>. (internal quotation marks omitted); <u>see also</u> <u>Northwinds Abatement, Inc. v. Employers Ins. of Wausau</u>, 258 F.3d 345, 351 (5th Cir. 2001)(stating that in Texas, "[t]he essential element in determining agency relationship is the principal's right to control the agent").

To establish a fact issue as to the existence of a principal-agent relationship between Goodyear and its independent dealer, Prine must adduce evidence that Goodyear had the right to control the means and details of the task Prine was to perform. Here, there is no evidence that Goodyear had the right to control the methods Prine used in accomplishing the task of changing tires on an oversized vehicle.

2. <u>There is no evidence that Trevor reasonably believed, based on Goodyear's conduct, that Prine was Goodyear's agent</u>

Section 8 of the Restatement (Second) of Agency defines apparent authority as the power of an agent "to affect the legal relations of another person by transactions with third persons." In <u>Ames v. Great S. Bank</u>, 672 S.W.2d 447 (Tex. 1984) the Texas Supreme Court adopted the Restatement's definition and stated,

> [a]pparent authority in Texas is based on estoppel. It may arise from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to

15

>     clothe an agent with the indicia of authority, thus
>     leading a reasonably prudent person to believe that the
>     agent has the authority she purports to exercise.

Id. at 450.[5]  The party asserting the apparent agency must prove that the principal, by its conduct, caused the party to reasonably believe that the putative agent was an agent of the principal, and that the party justifiably relied on the appearance of agency.  Baptist Mem'l Hosp. Sys. V. Sampson, 969 S.W.2d 945, 948-49 (citing and adopting Restatement (Second) of Agency § 267 (1958)).

Here, plaintiffs would have to show both that Trevor reasonably believed that Prine was Goodyear's agent and that Trevor justifiably relied on Goodyear's representation of such relationship.  There is no summary judgment evidence that Trevor believed that Prine was Goodyear's agent, much less that he relied on a representation by Goodyear that an agency relationship existed.

## VI.

### Order

For the reasons discussed above, the court concludes that Goodyear's motion for summary judgment should be granted.  Therefore,

The court ORDERS that all of plaintiffs' claims and causes of action against Goodyear be, and are hereby, dismissed with

---

[5] In Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947-48 n.2, the Court said that "[m]any courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably.  As a practical matter, there is no distinction among them."

16

prejudice.

    SIGNED March 27, 2007.

                                            /s/ John McBryde
                                            JOHN McBRYDE
                                            United States District Judge